**MURRAY, STONE & WILSON, PLLC**
By: **William P. Murray III, Esq.**
Attorney Identification No. 205016
By: **Matthew T. Stone, Esq.**
Attorney Identification No. 206409
By: **Erica C. Wilson, Esq.**
Attorney Identification No. 92995
One Belmont Avenue
Suite 310
Bala Cynwyd, Pennsylvania 19004
215-947-5300 (telephone)
813-251-2209 (fax)
Emails:     wmurray@mswlawgroup.com
            mstone@mswlawgroup.com
            ewilson@mswlawgroup.com

THIS IS NOT AN ABRITRATION
CASE.  ASSESSMENT OF DAMAGES
IS REQUIRED; JURY TRIAL DEMANDED.

Counsel for Plaintiff, Donald Greenspan,
as Administrator of the Estate of Ruth J.
Greenspan, deceased

---

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONALD GREENSPAN**, as Administrator of the **ESTATE OF RUTH J. GREENSPAN**, deceased<br>2 Waterview Road, Apt A6<br>West Chester, PA  19380<br><br>Plaintiff,<br><br>-vs-<br><br>**PLATINUM HEALHCARE GROUP, LLC**<br>65 Jay Street<br>Newark, NJ 07103<br><br>**PLATINUM HEALTH AT WESTGATE, LLC, d/b/a, WESTGATE HILLS REHABILITATION AND NURSING CENTER**<br>2050 Old West Chester Pike<br>Havertown, PA 19083<br><br>**APEX GLOBAL SOLUTIONS, LLC**<br>400 Rella Blvd., Suite 200<br>Montebello, NY 10901 | Civil No. _____<br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

**APEX HEALTHCARE PARTNERS, LLC**
400 Rella Blvd., Suite 200
Montebello, NY 10901

**VINTAGE HEALTHCARE, LLC**
400 Rella Blvd., Suite 200
Montebello, NY 10901

**PLATINUM PA HOLDINGS, LLC**
c/o Eliyahu Frankel
65 Jay Street
Newark, NJ 07103

**2050 OLD WEST CHESTER PIKE, LLC**
2071 Flatbush Ave., Suite 189
Brooklyn, NY 11234

**JACOB KARMEL**
16 New County Road
Airmont, NY 10952

       Defendants.

---

## COMPLAINT

Plaintiff, Donald Greenspan, as Administrator of the Estate of Ruth J. Greenspan, deceased, by and through undersigned counsel, Murray, Stone & Wilson, PLLC, files the instant Complaint, and in support thereof avers the following:

### I. PARTIES

#### A. Plaintiff

1.    Ruth J. Greenspan, an adult individual, was a resident at the skilled nursing facility commonly known as Westgate Hills Rehabilitation and Nursing Center (hereinafter "the Facility" or "Westgate").

2.    Ruth J. Greenspan died on January 3, 2019.

3. Donald Greenspan was appointed the Administrator of the Estate of Ruth J. Greenspan by the Register of Wills of Delaware County on March 5, 2020.

4. The Estate of Ruth J. Greenspan is domiciled in the Commonwealth of Pennsylvania.

## B. Defendants

5. Based on their membership, each of the entities named as a Defendants herein are residents of the States of New York and/or New Jersey.

6. Defendant Jacob Karmel is a resident of the State of New York.

7. Defendant, Platinum Health at Westgate, LLC, d/b/a, Westgate Hills Rehabilitation and Nursing Center, is engaged in the business of owning, operating and/or managing nursing homes, including Westgate Hills Rehabilitation and Nursing Center, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ruth J. Greenspan and in the operation of the Facility.

8. Defendants Platinum Healthcare Group, LLC; Apex Global Solutions, LLC; Apex Healthcare Partners, LLC; Vintage Healthcare, LLC; Platinum PA Holdings, LLC; and 2050 Old

West Chester Pike, LLC are just some of the limitation liability companies that the owners and controllers of the Platinum/Apex nursing home enterprise, including Jacob Karmel, utilized to own, operate, manage, and control Westgate Hills Rehabilitation and Nursing Center (as well as other skilled nursing facilities) during Ruth J. Greenspan's residency at Westgate.

9.      Defendant Jacob Karmel is an individual who joined together with the co-Defendants herein, and others, to own, operate, manage, control and direct the Defendants during all times relevant to this matter.

10.      The Defendants herein worked in concert to ensure that entities controlled by Jacob Karmel would operate and control Westgate during Ruth J. Greenspan's residency there.

11.      In an effort to avoid liabilities and as a risk management strategy, the Defendants collectively orchestrated themselves into a confusing, multi-tiered organizational structure whereby the operation and management of Westgate was split amongst many different entities, including the Defendants herein.

12.      This splitting of duties and responsibilities amongst the Defendants was done in order to avoid the creation of a single entity that might be held liable for the negligence and recklessness of Westgate and its owners and operators.

13.      In an effort to make this splitting of duties appear legitimate, the Defendants and their principals signed contracts with themselves and with their own colleagues, paid fees and rents to companies they also owned and controlled, and otherwise made arrangements that were intended to appear arms-length but which were, in fact, inside and interested.

14.      As a result, the agreements between the various Defendants are non-market transactions that were designed to enrich a small set of individuals sitting at the top and/or to the side of the Defendants, including but not limited to Jacob Karmel.

15.     Based on the way that the Defendants herein elected to organize themselves, Westgate was left in a position such that it could not operate or function as a skilled nursing facility without the contributions, roles and efforts of the Defendants herein.

16.     At all times material hereto, the Defendants individually and collectively owed duties, some of which were non-delegable, to the residents of Westgate, including to Ruth J. Greenspan, such duties being conferred by statute, existing at common law, and/or being voluntarily assumed by each Defendant.

17.     At all times material hereto, the Defendants individually and collectively, and/or through a joint venture, owned, operated, managed and controlled Westgate, and are individually and collectively engaged in the business of providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care services to the general public.

## II. JURISDICTION AND VENUE

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as complete diversity exists among the parties herein and the amount in controversy exceeds $75,000.00. The cause(s) of action all arose in the Eastern District of Pennsylvania.

## III. FACTUAL BACKGROUND

### A. Conduct of the Defendants

19.     Prior to her discharge and death, Ruth J. Greenspan was a resident of the Defendants' facility.

20.     Ruth J. Greenspan was incapable of independently providing for all of her daily care and personal needs without reliable assistance. In exchange for financial consideration, she was admitted to Defendants' Facility to obtain such care and protection.

21. The Defendants, through advertising, marketing campaigns, promotional materials and information sheets, held out themselves and the Facility as being able to provide medical, skilled nursing, rehabilitation, therapy and custodial care services to elderly and frail individuals, including Ruth J. Greenspan.

22. Defendants assumed responsibility for Ruth J. Greenspan's total healthcare, including the provision of nutrition, hydration, activities of daily living, medical, skilled nursing, rehabilitation, and therapy.

23. Defendants further assumed responsibility to provide Ruth J. Greenspan with ordinary custodial and hygiene services.

24. Defendants exercised complete and total control over the healthcare of all residents of the Facility, including Ruth J. Greenspan.

25. Defendants were vertically integrated organizations that were controlled by their respective members, managers and/or boards of directors, who were responsible for the operation, planning, management and quality control of the Facility.

26. The control exercised over the Facility by the Defendants included, inter alia: cash management; cost control; setting staffing levels; budgeting; marketing; maintaining and increasing census; supervision of the Facility administrator and director of nursing; supervision and oversight of the staff; development and implementation of nursing staff in-services; development and implementation of all pertinent policy and procedures; monitoring customer satisfaction; performing mock surveys; risk management; corporate and regulatory compliance; quality of care assessment; licensure and certification; controlling accounts payable and receivable; development and implementation of reimbursement strategies; retaining contract management, physician, therapy and dietary services; dictating census and payor source quotas

for admissions to the facility; and employing the Facility-level, regional and corporate staff who together operated the Facility.

27.     Defendants, by and through their respective members, managers, board of directors and corporate officers, utilized survey results and various other reports, including quality indicators, to monitor the care being provided at their nursing homes, including the Facility.

28.     Defendants exercised ultimate authority over all budgets and had final approval over the allocation of resources for staffing, supplies, and operations of their nursing homes including the Facility.

29.     As a part of their duties and responsibilities, Defendants had an obligation to establish policies and procedures that addressed the needs of the residents of the Facility, including Ruth J. Greenspan, with respect to the recognition and/or treatment of medical conditions, such as those experienced by Ruth J. Greenspan, so as to ensure that timely and appropriate care was provided for such conditions whether within the Facility, or obtained from other medical providers.

30.     Defendants, acting through their administrators, members, managers, board of directors and corporate officers, were responsible for supervising the standard of professional practice by the members of their staff at the Facility, including regarding the conduct at issue herein.

31.     Defendants had an obligation to employ competent, qualified and trained staff so as to ensure that proper care, treatment and services were rendered to individuals having medical, nursing and/or custodial needs, such as those presented by Ruth J. Greenspan as set forth herein.

32.     As a part of their duties and responsibilities, Defendants had an obligation to

maintain and manage the Facility with adequate staff and sufficient resources to ensure the timely recognition and appropriate treatment of the medical, nursing and/or custodial needs of the residents, such as Ruth J. Greenspan, whether within the Facility, or obtained from other medical care providers.

33.     Defendants made a conscious decision to operate and/or manage the Facility so as to maximize profits at the expense of the care required to be provided to their residents, including Ruth J. Greenspan.

34.     In their efforts to maximize profits, Defendants negligently, intentionally and/or recklessly mismanaged and/or reduced staffing levels below the level necessary to provide adequate care to the residents.

35.     Despite their knowledge of the likelihood of harm due to insufficient staffing levels, and despite complaints from staff members about insufficient staffing levels, Defendants recklessly and/or negligently disregarded the consequences of their actions, and/or negligently caused staffing levels at the Facility to be set at a level such that the personnel on duty could not and did not meet the needs of the Facility's residents, including Ruth J. Greenspan.

36.     Defendants intentionally increased the number of sick, elderly and frail residents with greater health problems requiring more complex medical care.

37.     Defendants knew that this increase in the acuity care levels of the resident population would substantially increase the need for staff, services, and supplies necessary for the new resident population.

38.     Defendants knew, or should have known, that the acuity needs of the residents in their nursing homes increased and, therefore, the required resources also increased, including the need for additional nursing staff in order to meet the needs of the residents, including Ruth J.

Greenspan.

39. Defendants failed to provide the resources necessary, including sufficient staff, to meet the needs of the residents, including Ruth J. Greenspan.

40. Defendants knowingly established staffing levels that created recklessly high resident to staff ratios, including high resident to nurse ratios and high resident to nurse aide ratios.

41. Defendants knowingly disregarded patient acuity levels while making staffing decisions, and also knowingly disregarded the minimum time required by the staff to perform essential day-to-day functions and treatments.

42. The acts and omissions of the Defendants were motivated by a desire to increase the profits of the nursing homes they own, including the Facility, by knowingly, recklessly, and with total disregard for the health and safety of the residents, reducing expenditures for needed staffing, training, supervision, and care to levels that would inevitably lead to severe injuries, such as those suffered by Ruth J. Greenspan.

43. The actions of the Defendants were designed to increase reimbursements by governmental programs, which, upon information and belief, are the primary source of income for the Facility.

44. The aforementioned acts directly caused injury to Ruth J. Greenspan and were known by the Defendants.

45. Defendants knowingly sacrificed the quality of care received by all residents, including Ruth J. Greenspan, by failing to manage, care, monitor, document, chart, prevent, diagnose and/or treat the injuries and illnesses suffered by Ruth J. Greenspan, as described herein, which included falls, fall-related trauma, compound fractures in both of her legs, delay in

treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death.

46.     At the time and place of the incidents hereinafter described, the Facility whereupon the incidents occurred was individually, collectively, and/or through a joint venture, owned, possessed, controlled, managed, operated and maintained under the exclusive control of the Defendants.

47.     At all times material hereto, the Defendants were operating personally or through their agents, servants, workers, employees, contractors, subcontractors, staff, and/or principals, who acted with actual, apparent and/or ostensible authority, and all of whom were acting within the course and scope of their employment and under the direct and exclusive control of the Defendants.

48.     The aforementioned incidents were caused solely and exclusively by reason of the negligence, carelessness and recklessness of the Defendants, their agents, servants, contractors, subcontractors, staff and/or employees and was due in no part to any act or failure to act on the part of Ruth J. Greenspan.

49.     Defendants, their agents, servants, contractors, subcontractors, staff and/or employees are/were, at all times material hereto, licensed professionals/professional corporations and/or businesses and the Plaintiff is asserting professional liability claims against them.

50.     In addition to all other claims and demands for damages set forth herein, Plaintiff is asserting claims for ordinary negligence, custodial neglect and corporate negligence against the Defendants herein, as each of the entities named as Defendants herein are directly and vicariously liable for their independent acts of negligence, for their acts of general negligence, and for their acts of general corporate negligence.

## B.    Injuries to Ruth J. Greenspan at the Facility

51.    Upon admission to the Facility and during the relevant time period, Ruth J. Greenspan was dependent upon the staff for her physical, mental, psycho-social, medical, nursing and custodial needs, requiring total assistance with activities of daily living, and she had various illnesses and conditions that required evaluation and treatment.

52.    Ruth J. Greenspan was at risk for future illnesses and injuries, including, falls, infections and neglect.

53.    Defendants engaged in a pattern of care replete with harmful and injurious commissions, omissions and neglect as described herein.

54.    Defendants deprived Ruth J. Greenspan of adequate care, treatment, food, water and medicine and caused her to suffer numerous illnesses and injuries, which included falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death.

55.    The severity of the negligence inflicted upon Ruth J. Greenspan by the Defendants, accelerated the deterioration of her health and physical condition, and resulted in physical and emotional injuries that caused her severe pain, suffering and mental anguish, together with unnecessary hospitalizations, and death.

56.    These injuries, as well as the conduct specified herein, caused Ruth J. Greenspan to suffer a loss of personal dignity, together with degradation, anguish and emotional trauma.

57.    Upon admission and thereafter, Ruth J. Greenspan was at risk for the development of falls.

58.     The Defendants failed to implement appropriate fall-prevention measures and failed to ensure that their staff was properly assisting and transferring Ruth J. Greenspan as needed.

59.     The Defendants failed to provide adequate and appropriate nursing care and services to prevent a fall that resulted in multiple fractures, followed by days or pain and suffering, and which resulted in a profound decline that ended in Ruth J. Greenspan's death.

60.     The Facility staff had failed to appropriate monitor, assist and transfer Ruth J. Greenspan, causing her to fall to the ground on or about the early morning hours of December 30, 2018. This fall caused Mrs. Greenspan to suffer compound fractures in both of her legs.

61.     The injuries suffered by Ruth J. Greenspan were severe and visible to the untrained naked eye. Nevertheless, she was not immediately transferred to the hospital.

62.     Hours later, after she was finally brought to an emergency room, personnel there found her fractures to be so severe that bone from her right leg could be seen poking out through her skin.

63.     Subsequent x-rays confirmed both her fractured right tibia and fibula as well as a fracture of her left femur.

64.     The injuries from this fall left Ruth J. Greenspan immobile, unable to use her legs, and suffering in pain.

65.     Due to her underlying conditions, she was not able to benefit from a surgical repair of her fractures. Instead, she was fitted with leg immobilizers and provided pain medication.

66. Ruth J. Greenspan was discharged back to Westgate on January 1, 2019, but was re-admitted to the hospital a mere 17 hours later, presenting with severe sepsis and a dramatic decline since her condition prior to the fall.

67. Ultimately, Ruth J. Greenspan was unable to overcome the degradation of her condition caused by the injuries she suffered at Westgate Hills Rehabilitation and Nursing Center, leading to and causing her death on January 3, 2019.

68. Defendants accepted Ruth J. Greenspan as a resident fully aware of her medical history and understood the level of nursing care she required.

69. Ruth J. Greenspan's chart includes and evidences missing and incomplete documentation.

70. The severity of the negligence inflicted upon Ruth J. Greenspan by the Defendants' mismanagement, improper/under-budgeting, understaffing of the Facility and lack of training or supervision of the Facility's employees, failure to provide adequate and appropriate health care; engaging in incomplete, inconsistent and fraudulent documentation; failure to develop an appropriate care plan; failure to ensure the highest level of physical, mental and psychosocial functioning was attained; failure to provide proper medication; and failure to provide sufficient food and water, causing Ruth J. Greenspan to suffer falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death.

71. As a result of the negligence, carelessness and recklessness of the Defendants herein described, Ruth J. Greenspan was caused to suffer serious and permanent injuries as described herein, to, in and about her body and possible aggravation and/or activation of any pre-existing conditions, illnesses, ailments, or diseases she had, and/or the accelerated

13

deterioration of her health, physical and mental condition, and a loss of the ordinary pleasures of life, a loss of dignity, humiliation, and more particularly, falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death, along with other body pain and damage, as well as anxiety, reaction and injury to her nerves and nervous system, some or all of which were permanent, together with other medical complications.

## COUNT ONE: NEGLIGENCE

72.    Plaintiff incorporates herein by reference the preceding paragraphs as though the same were more fully set forth at length herein.

73.    Upon accepting Ruth J. Greenspan as a resident at the Facility, Defendants individually and jointly assumed direct, non-delegable duties to Ruth J. Greenspan to provide her with adequate and appropriate healthcare, as well as basic custodial and hygiene services, as set forth herein.

74.    If Defendants were unable or unwilling to meet the needs of Ruth J. Greenspan, they had an affirmative duty and legal obligation to discharge Ruth J. Greenspan from the Facility.

75.    Defendants had the ultimate responsibility of ensuring that the rights of the residents, including Ruth J. Greenspan, were protected.

76.    Defendants owed a non-delegable duty to provide adequate and appropriate medical, skilled nursing, rehabilitation, therapy and custodial care services and supervision to Ruth J. Greenspan and other residents, such as reasonable caregivers would provide under similar circumstances.

77.    Defendants each owed a non-delegable duty to the Facility's residents, including

Ruth J. Greenspan, to hire, train, and supervise their employees so as to ensure that the Facility was operated and services were provided to Defendants' residents in a safe and reasonable manner.

78.     Defendants, by and through their agents, employees, and/or servants each owed a duty of care to Ruth J. Greenspan to exercise the appropriate skill and care of licensed physicians, nurses, nurse aides, directors of nursing, and/or nursing home administrators.

79.     Defendants each owed a duty and responsibility to furnish Ruth J. Greenspan with appropriate and competent medical, skilled nursing, rehabilitation, therapy and custodial care services.

80.     Defendants each owed and failed to fulfill the following duties to Ruth J. Greenspan:

> a.     the duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;
>
> b.     to select, train and retain only competent staff;
>
> c.     to oversee and supervise all persons who practiced nursing, medical and/or skilled healthcare within the Facility;
>
> d.     to staff the facility with personnel sufficient both in number and in training to provide the care and services required by the Facility's residents;
>
> e.     to ensure that the Facility's residents were treated with dignity and respect;
>
> f.     to maintain sufficient funding, staffing and resources for the Facility so that its residents were provided with the care and services they required;
>
> g.     to formulate, adopt, and enforce rules, procedures and policies to ensure quality care and healthcare for all residents, and to update the same as required by the applicable standards of care;
>
> h.     to take adequate measures to rectify known problems in the delivery of hygiene and custodial services as well as in the delivery of medical, skilled nursing, rehabilitation, and therapy care;

i.   to warn residents, their family and/or representatives of the Defendants' inability to provide adequate care and services when Defendants knew or should have known of their deficiencies in providing such care and services;

j.   to refuse admission to residents to whom they knew or should have known they could not provide reasonable care and services;

k.   to not admit more residents than to whom Defendants could safely provide adequate care and services;

l.   to keep the Facility's residents free from physical and mental abuse and neglect;

m.   to provide a safe, decent and clean living environment for the Facility's residents;

n.   and to assist the residents in retaining and exercising all of the Constitutional, civil and legal rights to which they are entitled as citizens of the United States and of the Commonwealth of Pennsylvania.

81.   In addition to the direct acts and omissions of the corporate Defendants, the Defendants also acted through their agents, servants and employees, who were in turn acting within the course and scope of their employment under the direct supervision and control of the Defendants.

82.   Defendants each authored, produced and/or received frequent reports detailing the number and types of injuries, illnesses, and infections sustained by Ruth J. Greenspan and the residents in the Facility.

83.   Despite being made aware of the types and frequency of injuries, illnesses, and/or infections, many of which were preventable, sustained by the residents of the Facility, including those suffered by Ruth J. Greenspan, Defendants failed to take steps to prevent the occurrence of said injuries, illnesses, and/or infections.

84.   The Defendants knew, or should have known, of the aforementioned problems that were occurring with the care of Ruth J. Greenspan, as they were placed on actual and/or

constructive notice of said problems, through Defendants' own reports and through governmental/state surveys.

85.     Defendants, as the corporate members, managers, owners, and/or directors of the Facility, breached their duties and were, therefore, negligent, careless and reckless in their obligations to Ruth J. Greenspan.

86.     The corporate conduct of the Defendants was independent of the negligent conduct of the employees of the Facility, and was outrageous, willful, and wanton, and exhibited a reckless indifference to the health and well-being of the residents, including Ruth J. Greenspan.

87.     The breaches of duties, general negligence, professional negligence, corporate negligence, carelessness and recklessness of the Defendants, individually, vicariously and/or acting by and through their officers, directors, members, managers, physicians, physicians' assistants, nurses, nurses aides, regional and corporate staff who examined, treated and/or communicated the condition of Ruth J. Greenspan, and through the administrative personnel responsible for hiring, retaining and/or dismissing staff, staff supervision and policy-making and enforcement, as well as any agents, servants, employees, contractors, subcontractors and/or consultants of the Defendants were exhibited in the following acts and omissions in the care and treatment of Ruth J. Greenspan:

a.      failure to hire, utilize, train and retain sufficient staff to meet the residents' needs, including those of Ruth J. Greenspan, which caused Ruth J. Greenspan to suffer falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death;

b.      failure to provide sufficient measures, supervision and assistance to prevent Ruth J. Greenspan from suffering falls and accidents;

c.      failure to develop, implement and administer to Ruth J. Greenspan appropriate infection control policies, procedures and techniques;

d. failure to provide adequate hygiene to prevent infection, to keep Ruth J. Greenspan clean and to preserve her dignity;

e. failure to timely transfer Ruth J. Greenspan to a hospital when her condition required the same;

f. failure to ensure that Ruth J. Greenspan did not needlessly suffer from preventable and treatable pain;

g. failure to ensure that Ruth J. Greenspan received her physician-ordered medications in accordance with her physicians' orders;

h. failure to ensure that Ruth J. Greenspan received her physician-ordered treatments in accordance with her physicians' orders;

i. failure to timely and appropriately notify Ruth J. Greenspan's physician(s) and consulting specialists when she experienced significant changes in her condition, contributing to Ruth J. Greenspan's injuries and illnesses, including falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death;

j. failure to obtain new or modified physician orders when Ruth J. Greenspan's changes in condition required the same;

k. failure to timely and appropriately notify Ruth J. Greenspan's family and personal representatives when she experienced significant changes in her condition, contributing to Ruth J. Greenspan's injuries and illnesses, including falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death;

l. failure to accurately and consistently document Ruth J. Greenspan's needs and the care and services provided to her in response to such needs;

m. failure to ensure that Ruth J. Greenspan did not develop serious and permanent injuries to, in and about her body and possible aggravation and/or activation of any pre-existing conditions, illnesses, ailments, or diseases she had, and/or accelerated the deterioration of her health, physical and mental condition, and more particularly, when she suffered falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death;

n. failure to respond in a timely manner with appropriate medical, nursing and custodial care when Ruth J. Greenspan was injured, including when she experienced falls, fall-related trauma, compound fractures in both of her legs,

delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death, when Defendants knew or should have known that Ruth J. Greenspan was at risk for the same;

o.      failure to ensure that each resident, including Ruth J. Greenspan, received, and that the Facility provided, the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

p.      failure to ensure that the Defendants used the results of its assessments to develop, review and revise Ruth J. Greenspan's comprehensive plan of care,

q.      failure to develop, implement and administer to Ruth J. Greenspan an appropriate, comprehensive and individualized care plan that included measurable objectives and timetables to meet her medical, nursing, custodial, mental and psychosocial needs that are identified in the comprehensive assessment, describing the services that were to be furnished to attain or maintain her highest practicable physical, mental, and psychosocial well-being, causing Ruth J. Greenspan to suffer falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death;

r.      failure to ensure that the Facility had sufficient nursing staff to provide nursing and custodial care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, including Ruth J. Greenspan, as determined by the residents' assessments and individual plans of care, and the failure to provide services by sufficient number of each of the required types of personnel on a twenty-four hour basis to provide nursing care to all residents, including Ruth J. Greenspan, in accordance with the residents' care plans;

s.      failure to administer the Facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident;

t.      failure to ensure that the services provided or arranged by the Facility were provided by qualified persons in accordance with each resident's written plan of care;

u.      failure to oversee and supervise all persons who practiced nursing and/or skilled healthcare in the Facility who failed to provide adequate and appropriate health care to prevent Ruth J. Greenspan from suffering from falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death;

v.      failure to formulate, adopt and enforce adequate rules, procedures and policies to prevent Ruth J. Greenspan from suffering falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death;

w.      failure to refer Ruth J. Greenspan to the necessary medical specialists in a timely manner who would have properly diagnosed and/or treated her condition;

x.      failure to provide Ruth J. Greenspan with the necessary care and services to allow her to attain or maintain the highest practicable physical, mental and psychological well-being;

y.      failure to implement a budget that properly funded the Facility and allowed the Facility to provide adequate and appropriate healthcare to Ruth J. Greenspan, including adequate staff and supplies;

z.      grossly understaffing the Facility;

aa.      failure to take appropriate steps to remedy continuing problems at the Facility that Defendants knew were occurring with Ruth J. Greenspan's care, which included the need to increase the number of employees, hiring skilled and/or trained employees, adequately training the current employees, monitoring the conduct of the employees, and/or changing the current policies and procedures to improve resident care;

bb.      failure to maintain compliance with the governmental regulations to which Defendants' delivery of care is compared as part of the annual and complaint state survey process performed by the Pennsylvania Department of Health; and,

cc.      in committing the acts and omissions herein, acting in a grossly negligent manner, with reckless indifference to the rights and safety of Ruth J. Greenspan.

88.    Upon information and belief, Defendants' owners, officers, directors, partners, members and managers were made aware of governmental/state survey results and placed on notice of the status of their nursing homes, including the Facility.

89.    Upon information and belief, the Defendants, including their owners, officers, directors, partners, members, managers and employees, knew that they had been cited by governmental units regarding Westgate Hills Rehabilitation and Nursing Center's failure to provide and implement an infection prevention and control program; failure to respond

appropriately to all alleged violations; failure to ensure services provided by the nursing facility meet professional standards of quality; failure to develop a complete care plan within seven days of the comprehensive assessment, and to have it prepared, reviewed and revised by a team of health professionals; failure to provide doctor's orders for the resident's immediate care at the time the resident was admitted; failure to provide appropriate treatment and care according to orders, resident preferences and goals; and, a failure to timely report suspected abuse, neglect, or theft and to report the results of the investigation to proper authorities.

90.     As a direct and proximate result of the Defendants' acts and omissions, and their breach of the duty of care, negligence, carelessness and recklessness, Ruth J. Greenspan suffered (a) severe permanent physical injuries resulting in pain, suffering, disfigurement and death, (b) mental anguish, embarrassment, humiliation, degradation, emotional distress, and loss of personal dignity, (c) loss of capacity for enjoyment of life, and (d) expense of otherwise unnecessary hospitalizations and medical care.

91.     In causing the aforementioned injuries, the Defendants knew, or should have known, that Ruth J. Greenspan would suffer such harm.

92.     At all times pertinent hereto, there was in full force and effect 18 Pa.C.S.A. §2713 "Neglect of Care Dependent Person," which set forth penal consequences for neglect of a care-dependent person.

93.     18 Pa.C.S.A. §2713 "Neglect of Care Dependent Person" expresses the fundamental public policy of the Commonwealth of Pennsylvania that elders, like children, are not to be abused or neglected, particularly in health care facilities or by persons holding themselves out as trained professionals, and that if such abuse or neglect causes injury, either physical or mental, then such conduct is actionable.

94. At all times pertinent hereto, Ruth J. Greenspan was a care dependent resident of the Defendants' Facility, and thus fell within the class of persons 18 Pa.C.S.A. §2713 "Neglect of Care Dependent Person" was intended to protect, thus entitling Plaintiff to adopt 18 Pa.C.S.A. §2713 "Neglect of Care Dependent Person" as the standard of care for measuring the Defendants' conduct.

95. Additionally, 18 Pa.C.S.A. §2713 "Neglect of Care Dependent Person" is directed, at least in part, to obviate the specific kind of harm which Ruth J. Greenspan sustained.

96. The Defendants, in accepting the responsibility for caring for Ruth J. Greenspan as aforesaid, were negligent "per se" and violated 18 Pa.C.S.A. §2713 "Neglect of Care Dependent Person" in that they:

a. failed to provide treatment, care, goods and services necessary to preserve the health, safety or welfare of Ruth J. Greenspan for whom they were responsible to provide care as specifically set forth in this Complaint;

97. At all times pertinent hereto, there was in full force and effect 35 P.S. §10225.101, *et seq.*, "Pennsylvania Older Adults Protective Services Act," which sets forth civil penalties, administrative penalties and other consequences for abuse of a care-dependent person.

98. 35 P.S. §10225.102, expresses the policy of the Commonwealth of Pennsylvania that:

> ...older adults who lack the capacity to protect themselves and are at imminent risk of abuse, neglect, exploitation or abandonment shall have access to and be provided with services necessary to protect their health, safety and welfare. It is not the purpose of this act to place restrictions upon the personal liberty of incapacitated older adults, but this act should be liberally construed to assure the availability of protective services to all older adults in need of them. Such services shall safeguard the rights of incapacitated older adults while protecting them from abuse, neglect, exploitation and abandonment. It is the intent of the General Assembly to provide for the detection and reduction, correction or elimination of abuse, neglect, exploitation and abandonment, and to establish a program of protective services for older adults in need of them.

99.     At all times pertinent hereto, Ruth J. Greenspan was an older person who was a resident of Defendants' Facility, who lacked the capacity to protect herself and thus fell within the class of persons 35 P.S. §10225.101, *et seq.* was intended to protect, thus entitling Plaintiff to adopt 35 P.S. §10225.101, *et seq.* as the standard of care for measuring the Defendants' conduct.

100.    Additionally, the Pennsylvania Older Adults Protective Services Act is directed, at least in part, to obviate the specific kind of harm which Ruth J. Greenspan sustained.

101.    In addition to the aforesaid negligence, which said negligence is specifically incorporated herein, the Defendants, in accepting the responsibility for caring for Ruth J. Greenspan as aforesaid, were negligent "per se" and violated 35 P.S. §10225.101, *et seq.* in that they had reasonable cause to suspect that Ruth J. Greenspan was the victim of abuse or neglect and failed to report said abuse and neglect to the appropriate agency and law enforcement officials.

102.    As a direct result of the aforesaid negligence "per se" of the Defendants, Ruth J. Greenspan was caused to sustain serious personal injuries and damages as aforesaid.

103.    The conduct of the Defendants was intentional, outrageous, willful and wanton, and exhibited a reckless indifference to the health and well-being of Ruth J. Greenspan.

104.    The conduct of the Defendants was such that an award of punitive damages is justified.

WHEREFORE, Plaintiff, Donald Greenspan, Administrator of the Estate of Ruth J. Greenspan, deceased, respectfully requests that judgment be entered in Plaintiff's favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00) whichever is greater, together with punitive damages, costs, and any other relief that this Honorable Court deems appropriate given the circumstances.  A jury

trial is demanded.

## COUNT TWO:  SURVIVAL STATUTE

105.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were more fully set forth at length herein.

106.    Plaintiff brings this action on behalf of the decedent's estate under and by virtue of the Pennsylvania Judiciary Act 42 Pa.C.S. 8302, known as the Survival Statute, to recover all damages legally appropriate thereunder.

107.    The following persons are entitled to share under this cause of action in the estate of said decedent, Ruth J. Greenspan: Donald Greenspan (son) and Judith Fahy (daughter).

108.    Plaintiff's decedent, Ruth J. Greenspan, did not bring any action during her lifetime, nor has any other action been commenced on behalf of Plaintiff's decedent, Ruth J. Greenspan, against the Defendants herein.

109.    Plaintiff claims damages for the conscious pain and suffering including mental and physical pain, suffering and inconvenience, loss of life's pleasures and aggravation of pre-existing medical conditions, and expense of otherwise unnecessary hospitalizations undergone by Ruth J. Greenspan, up to and including the time of her death, which was caused by the Defendants' breach of duties, negligence, carelessness and recklessness.

110.    Plaintiff claims damages for the fright and mental suffering attributable to the peril leading to the physical manifestation of mental injuries, physical injuries, falls, fall-related trauma, compound fractures in both of her legs, delay in treatment of her fractures, urinary tract infections, sepsis, pain mismanagement, custodial neglect, and ultimately, death, which occurred to Ruth J. Greenspan, and which was caused by the Defendants' breaches of duties, negligence, carelessness and recklessness.

111.    In causing the aforementioned injuries, the Defendants knew, or should have known, that Ruth J. Greenspan would suffer such harm.

112.    The conduct of the Defendants was intentional, outrageous, willful and wanton and exhibited a reckless indifference to the health and well-being of Ruth J. Greenspan.

113.    The conduct of the Defendants was such that an award of punitive damages is justified.

WHEREFORE, Plaintiff, Donald Greenspan, Administrator of the Estate of Ruth J. Greenspan, deceased, respectfully requests that judgment be entered in Plaintiff's favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00) whichever is greater, together with punitive damages, costs, and any other relief that this Honorable Court deems appropriate given the circumstances. A jury trial is demanded.

## COUNT THREE: WRONGFUL DEATH

114.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

115.    Plaintiff brings this action on behalf of the decedent's estate under and by virtue of the Pennsylvania Judiciary Act 42 Pa.C.S. 8301, known as the Wrongful Death Statute, to recover all damages legally appropriate thereunder.

116.    The following persons are entitled to share under this cause of action in the estate of said decedent, Ruth J. Greenspan: Donald Greenspan (son) and Judith Fahy (daughter).

117.    Plaintiff's decedent, Ruth J. Greenspan, did not bring any action during her lifetime, nor has any other action been commenced on behalf of Ruth J. Greenspan, deceased, against the Defendants herein.

118. Plaintiff claims damages for the pecuniary loss suffered by the decedent's survivors by reason of the death of Ruth J. Greenspan, deceased, as well as for the reimbursement of hospital, nursing, medical, and funeral expenses, and expenses of administration and other expenses incurred in connection therewith.

119. As a result of the death of Ruth J. Greenspan, deceased, the survivors, as aforesaid, have been deprived of the companionship, comfort, aid, assistance and society that they would have received from Ruth J. Greenspan, for the remainder of her natural life.

WHEREFORE, Plaintiff, Donald Greenspan, Administrator of the Estate of Ruth J. Greenspan, deceased, respectfully requests that judgment be entered in Plaintiff's favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00) whichever is greater, together with punitive damages, costs, and any other relief that this Honorable Court deems appropriate given the circumstances. A jury trial is demanded.

Respectfully Submitted,

**MURRAY, STONE & WILSON, PLLC**

Dated: November 23, 2020     BY: */s/ William P. Murray, III*
                                         William P. Murray III, Esquire
                                         *Attorneys for Plaintiff*